UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANITA KARCE,

                   Plaintiff,

  -against-

BUILDING SERVICE 32B-J PENSION FUND,

                   Defendant.
------------------------------------------------------------------X

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

CV 05 - 9142 (CSH) (MHD)

1.  On October 27, 2005, Anita Karce ("Plaintiff") commenced this action wherein she alleges that the Building Service 32BJ Pension Fund ("Fund") violated ERISA, specifically 29 U.S.C. Section 1132, by wrongfully denying Plaintiff an entitlement to a total and permanent disability benefit and that the Fund violated 29 U.S.C. Section 1133 by breaching its fiduciary obligations to Plaintiff by denying Plaintiff a full, fair and impartial determination thereby depriving Plaintiff of due process rights (See Exhibit A to Sturm Affidavit, Complaint paragraphs 1 et seq.).

2.  The Fund filed a timely answer to the Complaint admitting certain factual allegations and denying in substance the legal ramifications. The Funds denied violating ERISA in any manner encompassed by the Complaint (See Exhibit B to Sturm Affidavit, Fund Answer paragraph 1 et seq.).

3.  The Fund is a jointly-administered, multi-employer, labor-management trust fund established and maintained pursuant to various collective bargaining agreements in accordance with Section 302 (c)(5) of the Taft Hartley Act (29 U.S.C. § 186 (c)(5)) and 502 (d)(1) of ERISA

1

        (29 U.S.C. § 1002 (2)(3) and 1132 (d)(1), and a multi-employer plan within the meaning of Section 3(37) and 515 of ERISA (29 U.S.C. § 1002 (37) and 1145). The Fund maintains its principal office and place of business at 101 Avenue of the Americas, New York, New York (See Answer paragraph 6; Smith Affidavit paragraph 3).

4. This Fund is administered by an equal number of management and union trustees. The Fund is governed by a Declaration of Trust and Plan, administered by the Trustees. (See Smith Affidavit, paragraph 4). The Trust Agreement provides in pertinent part:

> FOURTH: The Trustees shall pay out of the Fund, at the time or times and in the manner specified in the Plan, the benefits provided for in the Plan.
>
> FIFTH: In the event that any disputed matter shall arise under the Plan, the decision of the Trustees upon such matter shall be binding and conclusive upon all parties and persons. However, an appeals procedure shall be established by the Trustees.
>
> SIXTH: In the administration of Trust, the Trustees are authorized and empowered, in their sole and absolute discretion;...(S) Except as otherwise provided herein, to establish such procedures, rules and regulations, not inconsistent with the provisions of this Agreement and the Plan, as shall be necessary to carry out the operation of the Plan and effectuate the purposes thereof.

(See Smith Affidavit, paragraph 4, Exhibit A)

5. A Summary Plan Description ("Pension SPD") sets forth the benefits provided by the Pension Fund. The relevant disability plan provides for a monthly cash benefit to participants who become totally and permanently disabled. (See Smith Affidavit, paragraph 5, Exhibit B).

6. The Pension SPD defines a "total and permanent disability" as a total and permanent inability, resulting from bodily injury or disease, to engage in any further employment. Section 4.11 states:

> Definition of Total and Permanent Disability. A Participant shall be deemed totally and permanently disabled if on the basis of medical evidence satisfactory to the Trustees, he or she is found to be totally and permanently unable, as a result of bodily injury or disease to engage in any further employment or gainful pursuit. The Trustees shall determine total and permanent disability and of the entitlement to a Disability Pension hereunder based upon information submitted.

(See Smith Affidavit paragraph 6, Exhibit B).

7. Section 7.07 of the Pension SPD grants the Trustees the sole reserved right to judge the standard of proof necessary for receipt of a disability pension. The provision states:

> Action Trustees. The Trustees shall, subject to the requirements of the law, judge of the standard of proof required in any case and the application and interpretation of this Plan, and decision of the Trustees shall be final and binding on all parties.

(See Smith Affidavit, paragraph 7, Exhibit B).

8. On October 7, 2002, the Fund received an application from Plaintiff wherein Plaintiff applied for a total and permanent disability pension. Plaintiff stated that she had last worked in covered employment (to wit, her last day of work) was almost eleven months earlier, October 31, 2001 (Smith Affidavit paragraph 8, Exhibit C).

9. The application was accompanied by an attending physician's statement of disability of Dr. Michael Aziz dated September 17, 2002, but which report states that Plaintiff had last been examined on October 2, 2002. Dr. Aziz concluded that Plaintiff was totally disabled from

her regular occupation and any other occupation. Dr. Aziz stated that Plaintiff would never be able to return to work regarding her occupation as [sic] cleaning services (Smith Affidavit paragraph 9, Exhibit D).

10. Also submitted with the application were:

   a) a report by Madison Avenue Physical Rehabilitation Wellness, dated January 21, 2002. The report concluded that Plaintiff suffered from left C5 radiculopathy and left lumbosacral radiculopathy (Smith Affidavit paragraph 10(a), Exhibit E).

   b) A report by Robert C. O Camoia, D.C. dated February 17, 2002, wherein he concludes:

   > From a chiropractic perspective and in accordance with the New York State Worker's Compensation Board medical guidelines, I find the claimant to exhibit a partial disability of a moderate degree.... Based upon today's physical evaluation the claimant is not capable of returning to her former occupational duties as described. The claimant would be limited to modified light duty type work only.... I would defer my opinion on permanency at this time....

   (Smith Affidavit paragraph 10(b), Exhibit F).

   c) An October 2, 2002 letter by Dr. Aziz, wherein Dr. Aziz states, *inter alia*, that Plaintiff "remains disabled from her work duties." (Smith Affidavit paragraph 10(c), Exhibit G).

   d) A report from Dr. Susan Ortiz, dated September 24, 2002, wherein Dr. Ortiz advises that Plaintiff "will continue to use Vioxx 25 mg daily as this has been helpful in alleviating the pain and will continue to be seen for physical therapy at the rate to 2 times per week for the next 8 weeks to control symptoms and maximize her

fundamental status. She remains totally disabled from her work activities." (Smith Affidavit paragraph 10(d), Exhibit H).

e)  A report from Dr. Ortiz dated June 25, 2002, wherein Dr. Ortiz states, *inter alia*, that Plaintiff "remains totally disabled from her work duties. It is highly unlikely that she will be able to return to her previous employment as an office cleaner." (Smith Affidavit paragraph 10(e) Exhibit I).

f)  A report by Dr. Frank M. Moore, dated May 10, 2002, wherein Dr. Moore recommends continued chiropractic care and physical therapy. As to Plaintiff's lumbar symptoms, Dr. Moore recommended a more aggressive treatment using steroid injections and possibly traction. Dr. Moore concluded that if these treatments failed to improve the conditions, Plaintiff could be a candidate for decompression. (Smith Affidavit paragraph 10(f), Exhibit J).

g)  An operative report of Dr. Alex M. Eingorn, relating to chiropractic procedures performed on September 30, 2002 and October 1, 2002, wherein Dr. Eingorn performed Manipulation Under Anaesthesia. Dr. Eingorn reported that Plaintiff tolerated the procedures well and without complications. (Smith Affidavit paragraph 10(g), Exhibit K).

h)  A report by Dr. Eingorn dated September 27, 2002, reporting that Plaintiff was under his care for low back pain, Sciatica and neck pain. The report stated that there was little or no improvement in Plaintiff's condition (See Affidavit paragraph 10(h), Exhibit L).

i)  A report by Dr. Eingorn, dated June 26, 2002, reporting, *inter alia*, that Plaintiff's progress has been slow and that she continued to experience frequent episodes of low back pain, daily neck pain, headaches and pain in the left shoulder. Dr. Eingorn states:

> Based on [Plaintiff's] history of underlying degenerative joint disease, as well as the injuries sustained in her work accident, it is my opinion that [Plaintiff] had suffered permanent injuries to her cervical and lumbar spine, and it is not likely that she will ever be able to return to her previous jobs.

(Smith Affidavit paragraph 10(i), Exhibit M).

j)  A report by Dr. Camoia, dated November 11, 2002, wherein Dr. Camoia opines that Plaintiff has an overall partial disability. (Smith Affidavit, paragraph 10(j), Exhibit N).

11. The above file was supplemented by the Fund with a computer printout showing contributions to the Fund on her behalf by her former employer through the January 1, 2002 quarter (Smith Affidavit paragraph 11, Exhibit O).

12. The Fund's medical advisor prepared a report dated October 28, 2002, wherein the medical advisor recommended denial of the claim for a permanent and total disability pension (Smith Affidavit paragraph 12, Exhibit P).

13. By letter dated December 4, 2002, the Fund denied Plaintiff's application. The denial letter stated:

> Dear Atina (sic) Karce:
>
> Your application for benefits due to Total/Permanent Disability has been rejected.

Section 4.11 of the Pension Plan description , provides that a Participant is totally and permanently disabled, if on the basis of medical evidence, he or she is found to be totally and permanently unable, as a result of bodily injury or disease, <u>to engage in any further employment or gainful pursuit</u>.

The Fund has determined that your condition does not meet the above described eligibility standard based upon the following information:
Dr. Aziz in the physician's statement of disability completed on 09/17/2002, stated that your (sic) are totally disabled; however he concluded that you will never be able to perform your occupation as cleaning services and maintenance, also on his re-evaluation report dated 10/02/2002, indicated "To date she remains disabled from her work duties."
Considering the medical information submitted, there are no conclusive information to determine that you are totally disabled for gainful employment at a sedentary level.
Copy of the above reference statement, as will as all other documents pertinent to your claim, will be sent to you upon request.

You or your authorized representative are entitled to a review of the Fund's decision, upon **written** request. Because the decision was based on the conclusions of qualified medical experts that you are not totally disabled, we are unable to recommend the submission of any specific material or information to perfect your claim. Any additional medical information that you can submit, however, will be welcomed and considered by the Fund Trustees. Specific information regarding the procedure to be followed for review by the Trustees is set forth below:

**RIGHT OF APPEAL:** A participant whose application for benefits under this plan has been denied in whole or in part, is to be provided with adequate notice in writing, setting forth the specific reasons for such denial, and shall have the right to <u>appeal the decision by written request files with the Trustees within **180** days</u> after receipt of such notice. The appeal shall be considered by a person or committee designated by the Trustees, at the sole discretion of the Trustees. Its decision shall be communicated to the claimant within <u>**45**</u> days after receipt of all pertinent evidence.

> "Please be aware that upon adverse decision of the Appeals Committee, you may have the Right to bring an action in a Court of Law, challenging the decision, pursuant to Section 502 of the Employee Retirement Income Security Act (ERISA)."
>
> "You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State Insurance Regulatory agency."

    For further assistance, please contact our office at (212) 388-3471/80.

    (Smith Affidavit paragraph 13, Exhibit Q).

14. By letter dated February 1, 2003, received February 4, 2003, Plaintiff appealed the denial of her application for a total and permanent disability benefit (Smith Affidavit paragraph 14, Exhibit R).

15. In support of the appeal, Plaintiff filed the following additional materials:

    a) January 14, 2003 Report from Dr. Ortiz, wherein Dr. Ortiz states:

    > Impression: Permanent and partial disability resulting from work-related accident on 10/31/01, with residual impairment in cervical, lumbar spine and left shoulder. In addition, there is concurrent chronic pain and adjustment disorder with depression. These factors combined have increased the degree of disability to the point where she is limited in activities of daily living and is considered unemployable

    Smith Affidavit paragraph 15(a), Exhibit S).

    b) Report by Dr. Aziz dated January 27, 2003, wherein Dr. Aziz states:

    > Currently [Plaintiff] is permanently and totally disabled from her occupation in cleaning services and unable to engage in any further employment.

    (Smith Affidavit paragraph 15(b), Exhibit T).

    c)        Undated report by Dr. Aziz addressed to the Building Service 32B-J Health Fund (received by the Pension Fund) stating that Plaintiff "is totally and permanently unable as a result of her injuries, to engage in any further employment or gainful pursuit. Furthermore, due to the nature and severity of her injuries, sitting is one of the things she is unable to do for any appreciable period of time without experiencing increasing pain and numbness in her lower back and the left leg and foot." (Smith Affidavit paragraph 15(c), Exhibit U).

16. On February 3, 2003, the Fund prepared an internal report recommending rejection of the appeal (Smith Affidavit paragraph 16, Exhibit V).

17. On February 10, 2003, a summary of Plaintiff's file was prepared for submission to the Trustees (Smith Affidavit paragraph 17, Exhibit W).

18. By letter dated March 6, 2003, Plaintiff was advised by the Fund that her appeal would be submitted to the Appeals Committee for a hearing. (Smith Affidavit paragraph 18, Exhibit X).

19. On March 13, 2003, computer printouts were generated by the Fund summarizing Plaintiff's eligibility for benefits and potential options (Smith Affidavit paragraph 19, Exhibit Y).

20. An appeals hearing was held on May 29, 2003, at which the Appeals Committee held Plaintiff's application in abeyance and directed that Plaintiff be examined by an independent medical examiner (Smith Affidavit paragraph 20, Exhibit Z).

21. An appointment was made for Plaintiff to be examined by an independent physician, Dr. Peter Marchisello. Dr. Marchisello is not an employee of the Funds. He is an orthopedic specialist. He is on a panel of specialists consulted by the Fund for this specialty. He is paid

a fee for his examination and report. (Smith Affidavit paragraph 21, Exhibit AA). Dr. Marchisello was asked to examine Plaintiff and perform ancillary tests, if necessary. Dr. Marchisello was asked to determine total disability on the basis of the following criteria:

> 1. Is this individual totally disabled? ----- Total Disability is defined by the Fund:-"as a result of illness or injury, you are <u>unable to work in any capacity</u>"
>
> 2. If yes, is this Disability Permanent?
>
> 3. Should this patient be reviewed annually?

(Smith Affidavit paragraph 21, Exhibit BB).

22.  On July 31, 2003, Dr. Marchisello issued his report. Dr. Marchisello concluded his prognosis as:

> The prognosis of this clamant in my opinion is good. There has been no significant progression of her condition since the accident of 1995 nor of 2001. The claimant declined surgery. The structural changes as described on the MRI of the lumbosacral spine are permanent and irreversible. The fongminal stemosis is undoubtedly responsible for the left sceatica and is also static. However, there is no evidence of an active radiculopathy at this time. I believe the sensory changes are hypochrondiacal in origin. The shoulder does not warrant any surgical treatment. The range of motion is virtually within normal limits. The cervical spine in my opinion can be carried to a full range of motion. The changes in the cervical spine at C5.6 are structural.

(Smith Affidavit paragraph 22, Exhibit CC).

23.  Dr. Marchisello then addressed the disability as:

> The disability in this clamant in my opinion is partial, permanent and structural. The claimant is however eligible in my opinion for gainful employment

(Smith Affidavit paragraph 23, Exhibit CC).

24. A report for the Appeals Committee was prepared on September 1, 2003 summarizing the records in the appeal. (Smith Affidavit paragraph 24, Exhibit CC).

25. An Appeals hearing was held on September 23, 2003, at which the Appeals Committee re-evaluated the appeal. (Smith Affidavit paragraph 25).

26. By letter dated September 26, 2003, Plaintiff was advised that her appeal was denied. The letter stated:

> Dear Ms. Karce:
>
> The appeal of the decision related to your claim for Disability Pension benefits due to total and permanent disability has been denied by the Trustees' Appeals Committee.
>
> Section 4.11 of the Pension Plan document provides that a participant is totally and permanently disabled, if on the basis of medical evidence satisfactory to the Trustees, he or she is found to have become, while working in covered employment, totally and permanently unable, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit.
>
> The Appeals Committee has determined that your condition does not meet the above-described eligibility standard based on the following medical information: Dr. Susan Ortiz physician statements on 9/24/02, 6/25/02 and 1/14/03; Dr. Michael Aziz's physician statement of 10/02/02 wherein he claims that you are disabled "from your work duties" and his statement of 1/27/03; Dr. Robert Camoia's report of 2/17/02 wherein he states that you have a "partial disability of a moderate degree", Dr. Frank M. Moore's report of May 10, 2002; Alex M. Dr. Eingorn's operative report of 10/02; and Dr. Peter Marchisello's independent disability evaluation report dated 7/31/03 wherein he states that your disability is "partial" and that you are eligible for "gainful employment"; as well as the entire file records.
>
> Copies of the above referenced reports, as well as all other documents relevant to your claim will be sent to you upon request, free of charge.

        Please be aware that you have the right to bring a civil action in a court of law challenging the decision pursuant to Section 502 (a) of the Employment Retirement Income Security Act (ERISA).

        For further assistance, please contact our office at (212) 388-3471/80.

(Smith Affidavit paragraph 26, Exhibit EE).

Dated: New York, New York
       May 22, 2006

                                        **RAAB, STURM & GOLDMAN, LLP**

                              By: _____
                                  Ira A. Sturm (IS-2042)
                                  *Attorneys for Defendant*
                                  330 Madison Avenue, Suite 2010
                                  New York, New York 10017
                                  Tel. 212- 683-6699
                                  Fax 212- 779-8596