UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
                                                                                      :

ATINA KARCE,                                                        :

                                               Plaintiff,          :
                                                                      :           05 Civ. 9142 (CSH) (MHD)
   -against-                                                 :
                                                                      :         MEMORANDUM OPINION
BUILDING SERVICE 32B-J PENSION FUND,    :              AND ORDER
                                                                      :
                                Defendant.      :
                                                                        :
------------------------------------------------------------------------x

HAIGHT, Senior District Judge:

       Plaintiff Atina Karce brought this action to challenge the denial of her application for a disability pension under a pension plan provided by her former employer, Triangle Cleaning Services, Inc. ("Triangle Services"). Defendant, the Building Service 32B-J Pension Fund (the "Fund"), is a multi-employer employee benefit fund that is the provider and administrator of the pension plan at issue here (the "Plan"). The Fund, which is administered by an equal number of union and management trustees, is regulated by the Employee Retirement and Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*. Defendant moves for summary judgment in its favor. Plaintiff cross-moves for summary judgment, limiting her requested relief to an order remanding the case to the defendant for further consideration. For the reasons given below, I deny defendant's motion, grant plaintiff's motion, and remand the case to the trustees of the Fund.

**I. BACKGROUND**

Karce was a full time employee of Triangle Services until October 31, 2001, when she ceased work after an accident resulting in injury to her back.[1]  Complaint ¶ 8.  On October 7, 2002, the Fund received an application from plaintiff for a disability pension under the Plan, which provides benefits for "total and permanent disability."  The affidavit of Frank Smith in support of defendant's motion for summary judgment contains the following definition of "total and permanent disability" covered by the Plan: "A Participant shall be deemed totally and permanently disabled if on the basis of medical evidence satisfactory to the trustees, he or she is found to be totally and permanently unable, as a result of bodily injury or disease to engage in any further employment or gainful pursuit.  The Trustees shall determine total and permanent disability and of the entitlement to a Disability Pension hereunder based upon information submitted."  Smith Aff. ¶ 5.  He alleges that this definition is found in the Summary Plan Description ("SPD"), a document that describes the Plan's benefits for participants, but it is actually from Section 4.11 of the Plan itself.  *See* Smith Aff. Ex. B.  The definitions of disability in the Plan and the SPD differ somewhat for the Building Service 32B-J Pension Fund, and to the extent that there is a conflict, the latter controls because it is the employee's primary source of information regarding benefits.  *Demirovic v. Bldg. Serv. 32B-J Pension Fund*, 2006 WL 2988701, at *1 n.1 (2d Cir. Oct. 19, 2006).  Nevertheless, because the language in defendant's submissions is not contested by plaintiff, and plaintiff never cites the SPD herself, I will use the Plan definition of "total and permanent disability" quoted by Smith for the purpose of resolving the motions before me.  That the communications from the Fund to Karce concerning her application also use the definition from Section 4.11 of the Plan rather than the SPD also diminishes the possible relevance of differences between the definitions.  *See* Smith Aff., Ex. Q, Ex. EE.

---

[1] The facts given in this Opinion are uncontested by the parties, unless otherwise noted.

Karce's application for disability benefits included (1) a Pension Fund form entitled "attending physician's statement of disability," dated September 17, 2006 and filled out by Dr. Michael Aziz, certifying that plaintiff was totally disabled from her regular occupation and any other occupation, along with another letter from Dr. Aziz stating that she "remains disabled from her work duties;" (2) reports by Dr. Susan Ortiz dated September 24, 2002 and June 25, 2002, both stating that Karce "remains totally disabled from her work activities;" (3) reports by Dr. Alex M. Eingorn from June and September, 2002, recounting the chiropractic procedures he performed on plaintiff and stating that "it is my opinion that [plaintiff] has suffered permanent injuries to her cervical and lumbar spine, and it is not likely that she will ever be able to return to her previous jobs;" (4) two further reports by Drs. Robert C. O. Camoia and Frank M. Moore concerning chiropractic care.  Smith Aff. ¶¶ 9, 10.

The Fund's medical advisor prepared two forms dated October 28, 2002 and December 4, 2002 in which the medical advisor recommended denial of the claim.  Smith Aff. Ex. P.  The Fund denied plaintiff's application by letter dated December 4, 2002 ("Denial Letter").  The pertinent portion of the letter reads as follows:

Dear Atina Karce:

Your application for benefits due to Total/Permanent Disability has been rejected.

Section 4.11 of the Pension Plan description, provides that a Participant is totally and permanently disabled if, on the basis of medical evidence, he or she is found to be totally and permanently <u>unable</u>, as a result of bodily injury or disease, to engage in any further employment or gainful pursuit.

The Fund has determined that your condition does not meet the above described eligibility standard, based upon the following information:
Doctor Aziz in the physician's statement of disability completed on 09/17/2002, stated that your [sic] are totally disabled; however, he concluded that you will never be able to perform your occupation as cleaning services and maintenance, also on his re-evaluation report dated 10/02/2002, indicated "To date she remains disabled from her work duties."

> Considering the medical information submitted, there are [sic] no conclusive information to determine that you are totally disabled for gainful employment at a sedentary level. . . .

Smith Aff., Ex. Q. The Denial Letter went on to inform Karce of her right to receive the documents pertinent to her claim and her right to appeal.

On February 4, 2003, plaintiff appealed the denial of benefits and filed the following additional materials in support of her appeal: (1) January 14, 2003 report by Dr. Ortiz stating that her disability has increased "to the point where she is limited in activities of daily living and is considered unemployable;" (2) January 27, 2003 report by Dr. Aziz noting, "She is unable to maintain sitting position for any prolonged period of time and unable to do any lifting. . . . Currently, she is permanently totally disabled from her occupation in cleaning services and unable to engage in any further employment;" (3) undated report by Dr. Eingorn[2] concluding that she "is totally and permanently unable, as a result of her injuries, to engage in any further employment or gainful pursuit. Furthermore, due to the nature and severity of her injuries, sitting is one of the things she is unable to do for any appreciable period of time without experiencing increasing pain and numbness in her lower back and the left leg and foot." Smith Aff. ¶ 15, & Ex. Q.

On May 29, 2003 the Fund's Appeals Committee decided to hold plaintiff's application in abeyance until she could be examined by an independent medical examiner. Dr. Peter Marchisello, the doctor selected by the Fund to perform this examination, submitted a report on July 31, 2003, in which he concluded:

> The prognosis of this claimant in my opinion is good. . . . The structural changes as described on the MRI of the lumbosacral spine are permanent and irreversible. The fongminal stenosis is undoubtedly responsible for the left sciatica and is also static.

---

[2] Smith incorrectly states that this letter was by Dr. Aziz, whereas the letter itself, included as Exhibit U of Smith's affidavit, indicates that it was by Dr. Eingorn. *Compare* Smith Aff. ¶ 15 *with* Smith Aff., Ex. U.

>However, there is no evidence of an active radiculopathy at this time. I believe the sensory changes are hypochrondiacal in origin. The shoulder does not warrant any surgical treatment. The range of motion is virtually within normal limits. The cervical spine in my opinion can be carried to a full range of motion. . . ."

Smith Aff, Ex. CC. After reevaluation by the Appeals Committee, plaintiff was notified by letter dated September 26, 2003 ("Appeal Letter") that her appeal was denied. The pertinent portion of the Appeal Letter states:

>Dear Ms. Karce:
>
>The appeal of the decision related to your claim for Disability Pension benefits due to total and permanent disability has been denied by the Trustees' Appeals Committee. . . .
>
>The Appeals Committee has determined that your condition does not meet the above-described eligibility standard based on the following medical information: Dr. Susan Ortiz physician statements on 9/24/02, 6/25/02 and 1/14/03; Dr. Michael Aziz's physician statement of 10/02/02 wherein he claims that you are disabled "from your work duties" and his statement of 1/27/03; Dr. Robert Camoia's report of 2/27/02 wherein he states that you have a "partial disability of a moderate degree", Dr. Frank M. Moore's report of May 10, 2002; Alex M. Dr. Eingorn's operative report of 10/02; and Dr. Peter Marchisello's independent disability evaluation report dated 7/31/03 wherein he states that your disability is "partial" and that you are eligible for "gainful employment"; as well as the entire file records. . . .

Smith Aff., Ex. EE. The letter then informed Karce of her right to receive copies of the reports and her right to pursue a civil action in a court of law challenging the decision. On October 27, 2005, plaintiff filed a complaint against the Fund in this Court alleging that the Fund had wrongfully denied her disability benefits to which she was entitled.

## II. DISCUSSION

**A.**     <u>Standards of Review</u>

### 1. *Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure provides that a court shall grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). "The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." *Rodriguez v. City of New York*, 72 F.3d 1051, 1060-61 (2d Cir. 1995). The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Matsushita Elec. Indus. Co. v.. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). If there is "any evidence in the record from any source from which a reasonable inference could be drawn in favor of the non-moving party," then summary judgment should be denied. *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d. Cir. 1994).

### 2. *ERISA Standard of Review*

Under ERISA, district courts review a denial of benefits by a plan administrator *de novo* unless the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where the administrator possesses this discretionary

authority, the court may reverse "only if the fiduciary's decision was arbitrary and capricious." *Rombach v. Nestle USA, Inc.*, 211 F.3d 190, 194 (2d Cir. 2000) (citation omitted). While deferential, the "arbitrary and capricious" standard requires the reviewing district court to consider "whether the decision was based on a consideration of the relevant factors." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1072 (2d Cir. 1995) (quotations and citation omitted). An administrator's denial is arbitrary and capricious if the decision was "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id.* at 1071 (citation omitted). "Substantial evidence," in turn, is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and] . . . requires more than a scintilla but less than a preponderance." *Id.* at 1072 (quotations and citation omitted). In making this determination, ordinarily the district court may consider only the administrative record that was before the plan administrator at the time of its decision.[3] *Id*.

If upon review a district court concludes that the decision of the plan administrator was arbitrary and capricious, the court must remand to the trustees of the plan with the instruction that they reconsider the plaintiff's application, unless the court determines that review by the trustees would be a "useless formality," *id.* at 1071, or unless the evidence in the record is such that a reasonable person could only conclude that the claimant was entitled to benefits, *Giraldo v. Bldg. Serv. 32B-J Pension Fund*, 2006 WL 380455, at *5 (S.D.N.Y. Feb. 16, 2006); *Brown v. Bldg. Serv. 32B-J Pension Fund et al.*, 392 F. Supp. 2d 434, 445 (E.D.N.Y. 2005).

The parties do not dispute that the terms of this particular Plan render the arbitrary and capricious standard the correct one for my review of the denial of Karce's benefits application. The issue before the Court, therefore, is whether the Fund's denial of her application was indeed

---

[3] A district court has discretion to consider additional evidence if "good cause" for doing so is shown. *See, e.g., Sheehan v. Metro. Life Ins. Co.*, 2003 WL 22290230, at *3-*4 (S.D.N.Y. Oct. 6, 2003) (citing cases).

arbitrary and capricious. If it was not, then summary judgment for the defendant is appropriate. If it was, then summary judgment for the defendant is inappropriate.

B.      **Application of the Law**

ERISA requires benefit plans to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," 29 U.S.C. § 1133(1), and to give a "full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). ERISA's implementing regulations elaborate on these notice and review requirements, requiring, *inter alia*, that "specific reason or reasons" be given in both the initial and the appeal denial letters. *See* 29 C.F.R. §§ 2560.503-1(g), 2560.503-1(j).

Despite the latitude given to plan administrators under the "arbitrary and capricious" standard, a court must still evaluate whether a "full and fair" review was conducted by the committee denying a claimant's appeal, and a decision that falls short of a "full and fair" review will not be affirmed even under the deferential standard. *See Demoriovic*, 2006 WL 2988701, at *7 (review by administrator that was not "full and fair" "cannot pass muster even under the deferential arbitrary and capricious standard of review"); *Crocco v. Xerox Corp.*, 137 F.3d 105, 108 (2d Cir. 1998) (same); *Giraldo*, 2006 WL 380455, at *4 (S.D.N.Y. Feb. 16, 2006) (same); *Brown*, 392 F. Supp. 2d at 443; *Cejaj v. Building 32B-J Health Fund*, 2004 WL 414834, at *7 (S.D.N.Y. Mar. 5, 2004) (same); *Nerys v. Building Service 32B-J Health Fund*, 2004 WL

2210256, at *8 (S.D.N.Y. Sept. 30, 2004) (Fox, M.J.) (same); *Neely v. Pension Trust Fund et al.*, 2003 WL 21143087, at *7-8 (E.D.N.Y. Jan. 16, 2003) [hereinafter *Neely I*] (same).

Courts in this circuit have interpreted a "full and fair" review as one in which the ERISA administrator "give[s] fair consideration to both sides of the case." *Crocco v. Xerox Corp.*, 956 F. Supp. 129, 140 (D. Conn. 1997) [hereinafter *Crocco I*], *aff'd in relevant part*, 137 F.3d 105, 108 (2d Cir. 1998) (affirming district court's determination that full and fair review had not been afforded "for substantially the reasons stated by the district court") [hereinafter *Crocco II*]. In determining the criteria constituting a "full and fair" review of a denial of benefits, courts have incorporated the notice requirements in §§ 2560.503-1(j) of the regulations governing the manner and content of a benefit determination on review. *See Brown*, 392 F. Supp. 2d at 442 ("The plan's fiduciary must consider any and all pertinent information reasonably available to him. The decision must be supported by substantial evidence. The fiduciary must notify the participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefor. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence.") (quoting *Crocco I*). A plan administrator is not required to give special weight to the opinions of a claimant's treating physicians, but neither is it permitted arbitrarily to refuse to credit a claimant's reliable evidence, including the opinions of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003).

Defendant contends that the Fund's communications with Karce meet everything required by ERISA.[4] *See* Def.'s Reply to Pl.'s Response to Def.'s Mot. Summ. J., Section III. I

---

[4] Defendant also asserts that plaintiff raises the issue of the sufficiency of notice given by the Fund for the first time in her response to defendant's Motion for Summary Judgment and that, consequently, this argument is waived because it was not in her Complaint. *See* Def.'s Reply to Pl.'s Response to Def.'s Mot. Summ. J., Section II. This

find, to the contrary, that the Fund's Appeal Letter does not constitute a full and fair review because the basis for its decision does not constitute a "specific reason or reasons" within the meaning of ERISA.

The total context of the Fund's communications with Karce is instructive for my analysis. The Denial Letter gives as its reason for denying benefits the fact that Dr. Aziz had found in his 9/17/2002 and 10/02/2002 reports that Karce "remains disabled from her work duties," a conclusion that, according to the Fund, fell short of the definition of total disability under the Plan. The Denial Letter states, "Considering the medical information submitted, there are [sic] no conclusive information to determine that you are totally disabled for gainful employment at a sedentary level." In light of the fact that Karce also submitted materials by Dr. Camoia, Dr. Ortiz, and Dr. Eingorn, the Denial Letter's exclusive reliance on Dr. Aziz's reports, which are themselves ambiguous,[5] is somewhat scant in explanation. But the *reason* for the denial is clear: the materials submitted to the Committee did not indicate that Karce was disabled from employment at a sedentary level. This articulation of a reason meets ERISA's notice requirements at this stage of the process, where the claimant must be given reasons for the denial and the information necessary to perfect her claim upon appeal. *See* 29 C.F.R. §§ 2560.503-1(g); *Burke v. Kodak Retirement Income Plan*, 336 F.3d 103, 107 (2d Cir. 2003); *see also Nerys*,

---

contention is without merit. Plaintiff in her complaint alleged a breach of the due process guarantees of ERISA and its implementing regulations, based in part upon the claim that "Defendant wrongfully denied Plaintiff a full, fair and impartial review of her claim by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary. . . ." Complaint ¶ 17. Merely because plaintiff did not characterize the failure to provide a full and fair review as a defect of notice specifically does not mean that notice was not a component of the defective process alleged by her. Plaintiff, in other words, most certainly did raise a claim implicating the notice question when she asserted a wrongful denial of the full and fair review that her application was due. *See Brown*, 392 F. Supp. 2d at 442 (criteria of "full and fair" review cited by courts includes issues of notice). I also would note that defendant quotes this passage from the Complaint on the very page where it asserts that plaintiff's complaint "does not raise any claims or causes of actions [sic] that remotely suggest that the letters were inadequate." Def.'s Reply to Pl.'s Response to Def.'s Mot. Summ. J., Section II. How, one wonders, could the defendant "ignore" evidence, as plaintiff asserts in her Complaint, unless through the notice it gave her in its letters?

[5] In his report from 9/17/02, Dr. Aziz checked the box that Karce was disabled for "any occupation" but then indicated that she would never be able to return to work "regarding her occupation as [sic] cleaning services and maintenance," *see* Smith Aff., Ex. D.

2004 WL 2210256, at *8-*9 (letter of denial did not meet ERISA requirements as it failed to provide information necessary for claimant to perfect his claim).  Indeed, it must have been clear to plaintiff that on appeal she needed evidence that she was no longer capable of even a sedentary occupation, as two of the three reports submitted by her on appeal expressly stated as much and the third appeared to indicate this as well.[6]  *See* Smith Aff., Ex. S; Ex. T; Ex. U.

The Appeal Letter, by contrast, does not provide a "reason" sufficient to satisfy ERISA's requirements.  In the Appeal Letter, the Appeals Committee not only makes no mention of the two medical opinions directly responding to the stated deficiencies in plaintiff's application; it simply offers the conclusory statement that the Appeals Committee has "determined that your condition does not meet the above-described eligibility standard based on the following medical information" and then lists reports by doctors which alternately support and do not support the plaintiff's claim.  For instance, the Appeal Letter lists "Dr. Michael Aziz's physician statement of 10/2/02 wherein he states that you are disabled 'from your work duties' and his statement of 1/27/03."  His statement of 1/27/03, however, gives an unqualified opinion that she is permanently and totally disabled from any employment whatsoever.  The denial of Karce's appeal cannot possibly be "based on" this letter by Dr. Aziz, even in part, as it simply does not support the Appeals Committee's conclusion.  The Appeal Letter also cites Dr. Eingorn's operative report of 10/02 but makes no mention of his subsequent letter submitted with Karce's appeal where he states categorically that he found her totally and permanently disabled and

---

[6] Dr. Aziz gave his evaluation that "[s]he is unable to maintain sitting position for any prolonged period of time and unable to do any lifting." Smith Aff., Ex. T.  Dr. Eingorn noted, "Furthermore, due to the nature and the severity of her injuries sitting is one of the things that she is unable to do for any appreciable period of time without experiencing increasing pain and numbness in her lower back, and left leg and foot." Smith Aff., Ex. U.  Dr. Ortiz's report states that Karce "remains disabled from her work duties," but then goes on to find that she "has limitations in ADL and unable to sit, stand or walk for long periods" and to state that factors have increased the disability "to the point where she is limited in activities of daily living and is considered unemployable." Smith Aff., Ex. S.  The term "unemployable," coupled with Dr. Ortiz's mention of Karce's inability to sit, stand, or walk for long periods of time, seem to suggest that the doctor found her unemployable both for her current work duties *and* for any other employment.

unable to sit for long periods of time.  Similarly, the Appeal Letter cites Dr. Ortiz's three letters as a "basis" for its rejection despite the fact that the last letter offers the opinion that Karce is "considered unemployable,"[7] again a conclusion that seems to suggest total and permanent disability under the Plan.

Even though a plan administrator need not credit a doctor's opinion as to whether a patient meets the criteria of the plan at issue, the deference given to the administrator does not relieve it of the obligation of providing a specific reason or reasons.  Numerous cases in this circuit have found a failure to provide specific reasons to be the determinative issue in deciding that a plan administrator's rejection of an application was arbitrary and capricious.  In *Giraldo*, which concerns the same Plan at issue here and therefore the same definition of disability, the Committee had rejected a claimant's application under circumstances where his doctor had found him to be "totally and permanently disabled for any work" but an independent doctor had found him fit for sedentary work.  *Giraldo*, 2006 WL 380455, at *2.  The court found that a "one-sentence conclusion that plaintiff is capable of performing sedentary work cannot be meaningfully reviewed by this Court," *id.* at *4.  *See also Crocco I*, 956 F. Supp. at 143, 142 (the "critical omission here was the failure to provide a specific reason for the denial" where "defendants point to various communications that supposedly informed Crocco of the reason her claim was denied, but none of them goes beyond the conclusory statement" offered).  Similarly, in *Nerys*, the court found that a letter which "did not explain with any specificity why the plaintiff's claim was deficient" fell short of a full and fair review and therefore was arbitrary and capricious.  *Nerys*, 2004 WL 2210256, at *8.  In *Brown*, the court found that "[w]here, as here, a plan administrator provides only a conclusory reason for rejecting a claim, e.g., because the claimant did not meet the plan definition for disability, without explaining why the claimant did

---

[7] *See* n.6, *supra*.

not meet the plan definition for disability, the administrator has not sufficiently grounded its decision that a reviewing court could determine whether that decision was arbitrary and capricious. This lack of explanation in itself renders the decision arbitrary and capricious." *Brown*, 392 F. Supp. 2d at 443. In *Brown* the Fund employed three doctors to examine the plaintiff, as opposed to the one employed by the Fund in this case, and still the court did not find the review to have been "full and fair" because of the lack of adequate explanation. *See also Nerys*, 2004 WL 2210256, at *8 (plan participant must be provided "with an explanation of the reasons for the denial that is adequate to afford an opportunity for effective review"); *Cook v. N.Y. Times Co. Group Long Term Disability Plan*, 2004 WL 203111, at *16 (S.D.N.Y. Jan. 30, 2004) (A "claims administrator may not completely conceal from a claimant its reasons for a denial of benefits. . . ," and recitation of a finding that claimant was not totally disabled under the plan terms does not count as reason); *Neely v. Pension Trust Fund et al.*, 2004 WL 2851792, at *13 (E.D.N.Y. Dec. 08, 2004) [hereinafter *Neely II*] ("The Plan's letter to Mrs. Neely did nothing more than state in conclusory fashion that she did not meet the Plan's standard for eligibility. . . . The Pension Committee failed to articulate its specific reasons underlying its decision.").

It is true that the mere existence of conflicting evidence does not render the Committee's decision arbitrary or capricious. *Lekperic v. Building Service 32B-J Health Fund, 2004 WL 1638170, at *4 (E.D.N.Y. Jul. 23, 2004)* (quoting *Rosario v. Local 32B-32J*, 2001 WL 930234, at *4 (S.D.N.Y. Aug. 16, 2001)). In the present case, however, it is not the existence of conflicting evidence that is problematic, nor even a choice of particular evidence over other evidence,[8] but

---

[8] In other words, this Court is not evaluating the denial of Karce's appeal against ERISA's requirement that it be based on "substantial evidence," but rather against ERISA's notice and review requirements. *See Nerys*, 2004 WL 2210256, at *6-*8 (S.D.N.Y 2004) (decision of trustees to deny disability benefits was not unsupported by substantial evidence but did fail to conform to full and fair review requirements). So while defendant makes much of its view that Judge Johnson in his *Neely II* decision overstepped the bounds of the arbitrary and capricious review when he found, even after remand, that the Trustees had still not met ERISA's requirements, *see* Def. Reply to Pl.'s

rather the fact that the "basis" for the decision was a catalogue of bits and pieces of evidence that conflict and, in some cases, ignore more recent pronouncements by the same doctors. In *Sekoulovic v. Building Service 32B-J Health Fund*, 2001 WL 687330 (S.D.N.Y. June 18, 2001) (Fox, M.J.), where the Fund's medical consultant had determined that the more detailed among doctors' reports should be accorded weight, the court determined that the trustees' decision "was based on reason." *Id.* at *5. That cannot be said of the case at bar, where the Appeal Letter ignores some material of the doctors it cites and "bases" its decision on at least one report indisputably supporting Karce's claim. In *Kupa v. Building Service 32B-J Pension Fund*, 2006 WL 2506485 (S.D.N.Y. Aug. 30, 2006) (Maas, M.J.), although the Committee's denial letter on appeal resembles the one at issue here, the plaintiff's treating physician did not appear to disagree with the independent physician's finding that the plaintiff was physically able to perform sedentary work. *See id.* at *6. Here, by contrast, Dr. Eingorn and Dr. Aziz explicitly stated, contrary to the determination of Dr. Marchisello, that they found Karce incapable of any employment, including sedentary employment.

In sum, it is the view of this Court that the Appeal Letter's catalogue of doctors' opinions that includes directly contradictory opinions and ignores the evidence presented by plaintiff on appeal is "without reason." While I recognize that the high bar set by this Fund for recovery of disability benefits is the result of a "delicate negotiation process between labor and management that does not warrant judicial interference," *Dzidzovic*, 2006 WL 2266501, at *10 (S.D.N.Y. Aug. 7, 2006), the articulation of a reason or reasons is too much a core component of ERISA's purpose and basic requirements to be dispensed with. A failure to base a conclusion on reason is

---

Response to Def.'s Mot. Summ. J., Section III, much of *Neely II*'s focus was on whether the Committee was justified in denying benefits on the basis of the evidence it considered. *See Neely II, at *11-*12.* To the extent the decision turned on a finding of insufficiency of evidence, it is inapposite here, and I do not base my conclusion upon its reasoning.

the very definition of arbitrariness and, as such, does not pass muster under the present standard of review.

      The Second Circuit's recent decision in *Demirovic* does not foreclose my finding that the Plan did not afford Karce a full and fair review due to the inadequacy of its reasons. In a situation in which the same Fund relied on the determinations of two independent physicians over the findings of five doctors proffered by the plaintiff, the court determined, "It was within the Fund's discretion to credit the opinions of Drs. Toriello and Brown over those of Demirovic's own physicians, and, under the circumstances of this case, we do not think that the Fund was required to offer any further explanation of its decision to do so." *Demirovic*, 2006 WL 2988701, at *4. In that case, however, the Fund's Appeals Committee had informed the claimant that it was denying her claim on the basis of the reports by the two independent doctors, following review of her entire file. *See id.* At *2. In other words, the Committee did indicate that it credited the opinions of two doctors *over* those of others. While the Second Circuit's assessment that the committee was not required to offer "any further explanation of its decision" does indicate that the reasons given by the Fund perhaps need not be as elaborate as some courts in this circuit have found, *see, e.g., Cejaj*, 2004 WL 414834, at *9 ("[I]n conducting a "full and fair review," [trustees] must demonstrate that they considered the evidence from both sides and explain why they found one medical opinion more credible than other, directly conflicting opinions."), the court did limit its conclusion to the specific facts before it. And those differ significantly from the facts of this case, where the Appeals Committee both "based" its denial on a list of conflicting evidence and, in that list, cited earlier statements by the plaintiff's doctors while ignoring their clarifications provided in Karce's appeals material.

Even if the communication by the Fund with Karce in the Appeal Letter did amount to a adequate explanation of its "reason" for denying her appeal, *Demirovic* makes clear another respect in which the Fund did not afford her a full and fair review. The Second Circuit held that the trustees' review of a claimant's "total disability" application "must consider the claimant's ability to pursue gainful employment in light of all the circumstances," *Demirovic*, 2006 WL 2988701, at *6, and that this includes a consideration of what type of employment a claimant actually remains capable of performing. In that case, which involved the same definition of disability provided by the Fund, the Fund had maintained that the Demirovic was still capable of a sedentary occupation and denied her claim on that basis. The court, however, found that the question of whether Demirovic could actually secure such occupation was "not an abstract concern" where she was a woman in her late fifties with limited English language ability who had worked as an unskilled laborer for nearly thirty years. *Id.* at *4. The Second Circuit determined, consequently, that a proper inquiry by the Fund in Demirovic's case would have involved not only a medical assessment of her physical capacity to perform physical and sedentary work but also a "non-medical assessment as to whether she has the vocational capacity to perform any type of work—of a type that actually exists in the national economy—that permits her to earn a reasonably substantial income from her employment, rising to the dignity of an income or livelihood." *Id.* at *7. This is because a finding that a claimant is physically capable of sedentary work is "meaningless without some consideration of whether she is vocationally qualified to obtain such employment, and to earn a reasonably substantial income from it, rising to the dignity of an income or livelihood, though not necessarily as much as she earned before the disability." *Id.; see also Giraldo*, 2006 WL 380455, at *5 (remanding for trustees to make "specific findings as to the plaintiff's physical disability and the type(s) of

sedentary job(s) she could or could not perform"); *Brown*, 392 F. Supp. 2d at 444 (Fund should not have flatly refused to consider the claimant's actual prospects for finding sedentary work); *Cejaj*, 2004 WL 414834, at *8 ("This failure to identify other viable employment options suggests that the Trustees did not conduct a 'full and fair' review.").

Here the reason offered in the Denial Letter for denying disability benefits was the trustees' assessment that Karce remained capable of sedentary work. Like Demirovic, Karce is a woman in her late fifties, although the record does not indicate her skills and training. Under *Demirovic*, the Plan trustees must take these factors—indeed, "all of the circumstances relevant to plaintiff's claim for disability," *Demirovic*, 2006 WL 2988701, at *1—into consideration. By not indicating in the Appeal Letter that it had considered what sort of sedentary work Karce was capable of performing, the Appeals Committee failed to evaluate her application in light of her particular circumstances and thus failed to give her a full and fair review.

### III. CONCLUSION

For the foregoing reasons, I deny defendant's motion for summary judgment. Plaintiff's motion for limited relief is granted, because remand of the case to the trustees for reconsideration is the appropriate resolution of these motions. There is no basis upon which to conclude that remand would be a "useless formality."

Under *Demirovic*, the trustees must consider both whether Karce is physically capable of obtaining employment from which she may earn a reasonably substantial income and whether she is vocationally qualified to obtain such employment. *See Demirovic*, 2006 WL 2988701, at *7. While the trustees need not employ a particular method to make this determination, their

conclusion must satisfy a reviewing court that consideration of the claimant's circumstances was not arbitrary and capricious. *Id.* Although my review was confined to the administrative record before the Committee, the trustees upon remand of this case should look at any additional materials submitted by Karce in support of her application.[9]

It is SO ORDERED.

Dated: New York, New York
       October 31, 2006

```
                                           CHARLES S. HAIGHT, JR.
                                      SENIOR UNITED STATES DISTRICT JUDGE
```

---

[9] In *Miller*, the Second Circuit directed that "if upon review a district court concludes that the Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion or permitting denial of the claim or remand would otherwise be a 'useless formality.'" *Miller*, 72 F.3d at 1071. While the failure to meet the arbitrary and capricious standard in that case had turned on the inadequacy of evidence considered by the trustees, rather than on any inadequacy in notice, remand of the case with instructions to the trustees to consider additional evidence is appropriate here as well, where Karce may need to supply additional evidence of her inability to be gainfully employed in a sedentary position for the Committee's consideration of her circumstances in light of *Demirovic.*